1   PATRICIA K. GILLETTE (STATE BAR NO. 74461)
    pgillette@orrick.com
2   ANDREW R. LIVINGSTON (STATE BAR NO. 148646)
    alivingston@orrick.com
3   AMIRA B. DAY (STATE BAR NO. 239045)
    aday@orrick.com
4   LENA P. RYAN (STATE BAR NO. 258782)
    lenaryan@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
6   405 Howard Street
    San Francisco, CA  94105-2669
7   Telephone:    +1-415-773-5700
    Facsimile:     +1-415-773-5759
8

9   Attorneys for Defendant
    TYCO ELECTRONICS CORPORATION

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

| 14  ANTHONY VILLA, as an individual and on behalf of all others similarly situated, | Case No. CV 10-00516 MHP |
|---|---|
| 15              Plaintiff, | **DEFENDANT TYCO ELECTRONICS CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (FED. R. CIV. P. 56); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME** |
| 16 | |
| 17        v. | |
| 18  TYCO ELECTRONICS CORPORATION, a corporation; TYCO INTERNATIONAL (US) INC., a corporation; and DOES 1 through 50 inclusive. | |
| 19 | |
| 20              Defendants. | |
| 21 | Judge: Hon. Marilyn Hall Patel |
| 22 | Date: November 1, 2010 |
| 23 | Time: 2:00 p.m. |
|  | Ctrm.: 15 |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF RELIEF SOUGHT ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.    INTRODUCTION ......................................................................................................1

II.   STATEMENT OF FACTS .........................................................................................2

    A.   TE's Organizational Structure .........................................................................2

    B.   TE's Policies and Procedures ...........................................................................3

        1.   Payment of Wages and Overtime ........................................................3

        2.   Rest and Meal Breaks ..........................................................................3

        3.   Recordkeeping .....................................................................................3

        4.   Reimbursement of Business Expenses .................................................4

    C.   Plaintiff's Employment at TE ...........................................................................4

        1.   Plaintiff Is Hired to Work in a Group of Seven Electricians .....................4

        2.   Plaintiff Incurs No Work-Related Expenses.........................................5

        3.   Plaintiff Never Misses a Meal or Rest Break .........................................6

        4.   Plaintiff Is Paid for All Time He Worked and Receives Accurate
           Pay Stubs ..............................................................................................7

    D.   Plaintiff's Termination ......................................................................................8

        1.   Plaintiff's Last Day of Work Is Monday, December 22, and He Is
           Officially Terminated on Tuesday, December 23 ................................8

        2.   TE Sends Plaintiff's Final Checks Via Priority Overnight Mail For
           Delivery On His Termination Date.......................................................8

        3.   Plaintiff is Overpaid $193.54 in January 2009 ...................................9

    E.   Plaintiff's Lawsuit ............................................................................................9

III.  THE COURT SHOULD GRANT SUMMARY JUDGMENT......................................10

    A.   Plaintiff Cannot Prove Any Violation of Section 226.7 ..................................10

        1.   Plaintiff's Admissions Doom His Meal and Rest Break Claim ...............11

        2.   Plaintiff is Not Entitled To Waiting Time Penalties Under Section
           203 ......................................................................................................13

    B.   Plaintiff's Overtime-Related Claims Should Be Dismissed.............................13

    C.   Plaintiff's Claim for Violation of Sections 201-204 Lacks Merit ......................14

        1.   Plaintiff Presents No Evidence of Any Section 204 Violation Nor
           Can He .................................................................................................14

        2.   TE Took All Reasonable Steps Necessary To Timely Pay Plaintiff
           His Final Wages...................................................................................14

**TABLE OF CONTENTS**
**(continued)**

Page

3. In Any Event, TE Has Already Compensated Plaintiff For the One-Day Delay .................................................................................................... 16

D. Plaintiff's Claim for Violation of Labor Code Section 226 is Baseless ............... 16

E. Plaintiff Lacks Evidence of Any Section 2802 Violation ..................................... 17

F. Plaintiff's Section 17200 Claims Are Derivative And Thus Fail ......................... 18

G. The Putative Class Claims Should Be Dismissed Without Prejudice ................... 19

IV. CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Brown v. Fed. Express Corp.*,
249 F.R.D. 580 (C.D. Cal. 2008) ...................................................................................11

*Gluth v. Kangas*,
951 F.2d 1504 (9th Cir. 1991) .....................................................................................20

*Kenny v. Supercuts, Inc.*,
252 F.R.D. 641 (N.D. Cal. 2008) .................................................................................11

*Lee v. State of Oregon*,
107 F.3d 1382 (9th Cir.1997) ......................................................................................20

*Lewis v. Casey*,
518 U.S. 343 (1996) .....................................................................................................19

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ...............................................................................19, 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .....................................................................................................19

*Newson v. Countrywide Home Loans, Inc.*,
2010 WL 2034769 (N.D. Cal. 2010) ...........................................................................19

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .....................................................................................................19

*Perez v. Safety-Kleen Sys., Inc.*,
253 F.R.D. 508 (N.D. Cal. 2008) .................................................................................11

*White v. Starbucks Corp.*,
497 F. Supp. 2d 1080 (N.D. Cal. 2007) .......................................................................11

## STATE CASES

*Barnhill v. Robert Saunders & Co.*,
125 Cal. App. 3d 1 (1981) ...........................................................................................15

*Farmers Ins. Exch. v. Superior Court*,
2 Cal. 4th 377 (1997) ...................................................................................................19

*Lazar v. Hertz Corp.*,
69 Cal. App. 4th 1494 (1999) ......................................................................................19

*Manford v. Singh*,
40 Cal. App. 700 (1919) ..............................................................................................15

*Murphy v. Kenneth Cole Prod'ns, Inc.*,
40 Cal. 4th 1094 (2007) ...............................................................................................12

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

## FEDERAL STATUTES

4

Fed. R. Civ. P. 56.................................................................................................................1

5

## STATE STATUTES

6

Cal. Lab. Code § 201 (a).....................................................................................................14

7

Cal. Lab. Code § 203 ...............................................................................................13, 14, 16

8

Cal. Lab. Code § 203(a).........................................................................................................4

9

Cal. Lab. Code § 204(a) ......................................................................................................14

10

Cal. Lab. Code § 226(a)................................................................................................12, 17

11

Cal. Lab. Code § 226(e).......................................................................................................17

12

Cal. Lab. Code § 226.7 ........................................................................................................12

13

Cal. Lab. Code. § 226.7(a)...................................................................................................12

14

Labor Code § 227.3 ...............................................................................................................9

15

Cal. Lab. Code § 512(a).......................................................................................................12

16

Cal. Lab. Code § 2802(a).....................................................................................................17

17

California Business and Professions Code § 17200 ......................................................10, 19

18

## OTHER AUTHORITY

19

DLSE Enforcement Policies & Interpretations Manual, § 4.2.2 .........................................14, 15

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP

**NOTICE OF MOTION AND MOTION**

TO:   PLAINTIFF ANTHONY VILLA AND HIS ATTORNEYS OF RECORD.

PLEASE TAKE NOTICE that on November 1, 2010 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Marilyn Hall Patel in Courtroom 15, 18th Floor of the above-titled Court located at 450 Golden Gate Ave., San Francisco, California, Defendant Tyco Electronics Corporation ("TE") will move, and hereby does move, pursuant to Federal Rule Of Civil Procedure 56, for an order granting summary judgment or, in the alternative, partial summary judgment, in its favor on the individual claims of Plaintiff Anthony Villa set forth in Plaintiff's First Amended Class Action Complaint for Damages and Injunctive Relief, dismissing Plaintiff's individual claims with prejudice, and dismissing the putative class claims without prejudice.  TE's motion is made on the grounds that there is no genuine issue as to any material fact with respect to each of Plaintiff's individual claims for relief.  The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, including the Declarations of Armando Ablaza, Tracey Ferrara, Elizabeth Goodhart, Kenneth Harris, Lynne Pereira, Lena P. Ryan, and Tonya Siegfried, the accompanying exhibits submitted in support of the motion, and such other evidence and arguments as may be presented at the hearing on this matter.

**STATEMENT OF RELIEF SOUGHT**

TE seeks summary judgment or, in the alternative, partial summary judgment, in its favor as to all claims for relief brought by Plaintiff, dismissal of Plaintiff's individual claims with prejudice, and dismissal of the putative class claims without prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Anthony Villa worked briefly for TE.  From start to finish, he was employed barely two months before TE terminated his employment – during his training period – for poor attendance.  This fleeting association, however, did not stop Plaintiff from launching this wage and hour class action against TE in which he asserts a slew of claims and seeks to represent more than 1,500 employees.  But Plaintiff should have looked before he leaped, because even at this

1   early stage of the case, it already is apparent that he cannot prevail on any of his individual

2   claims, let alone adequately represent the proposed class.  Accordingly, the Court should grant

3   summary judgment in TE's favor, and the case should be dismissed.

4          Although Plaintiff makes many bold and aggressive allegations against TE in his

5   Complaint, his claims are utterly undone by his own deposition testimony.  For instance, Plaintiff

6   asserts that TE denied him meal and rest breaks and did not pay him for the rest breaks he was

7   allowed to take.  Under oath, however, Plaintiff admitted facts completely gutting this claim,

8   conceding he received all his meal and rest breaks owed him and that all of his rest breaks were

9   paid as required by law.  Similarly, Plaintiff claims that TE violated the law by failing to pay him

10  all earned overtime.  Yet when questioned at his deposition, Plaintiff could not identify a single

11  instance in which he was not paid for all the time he worked, and he ultimately acknowledged he

12  was paid all wages owed to him.  It was the same story for Plaintiff's remaining claims for failure

13  to provide him with timely final pay, failure to provide him with accurate pay stubs, and failure to

14  reimburse business expenses.  Time and time again, when he was questioned on these issues in

15  deposition, Plaintiff admitted to facts that eviscerated these claims.

16         Simply put, Plaintiff grossly overreached when he jumped into this lawsuit.  While his

17  Complaint spins a story about numerous violations of the Labor Code, there is absolutely nothing

18  to buttress Plaintiff's theories.  Plaintiff's claims, therefore, fail as a matter of law, and the Court

19  should grant this motion for summary judgment and dismiss this action against TE.

20  **II.**      **STATEMENT OF FACTS**

21          **A.**      **TE's Organizational Structure**

22         TE designs, manufactures, and markets consumer and industrial products, including

23  electronics equipment.  (Pereira Dec., ¶ 2.)  TE has various business units, including the

24  Communications & Industrial Solutions ("CIS") business unit.  CIS has a manufacturing facility

25  in Menlo Park, California that manufactures shrinkable tubing and a polymer compound used in

26  electronics equipment.  (*Id.*, ¶ 3.)  Plaintiff worked in the Plant Maintenance department ("PM")

27  of CIS during his brief employment with TE.  PM was responsible for providing maintenance

28  support for the Menlo Park manufacturing facility.  (*Id.*, ¶ 4.)

1

### B.   TE's Policies and Procedures

2

#### 1.   Payment of Wages and Overtime

3   TE currently uses a timekeeping system called Kronos, which employees use to swipe in

4   and out for their scheduled shifts.  (*Id.*, ¶ 13.)  Employees are responsible for accurately recording

5   their time and informing their supervisors of any swiping errors.  (*Id.*; Pl. Dep., 163:16-164:21.)[1]

6   TE pays California employees biweekly.  (Goodheart Dec., ¶ 4.) TE pays non-exempt

7   California employees a rate of one and one-half times the employee's regular rate of pay for all

8   hours worked between 8 and 12 hours in a workday, for the first 8 hours worked on the seventh

9   consecutive day of work in a workweek, and for hours worked in excess of 40 hours in one

10   workweek.  (Goodhart Dec., ¶ 3; Pl. Dep., 112:18-22.)  TE pays double the regular rate for all

11   hours worked in excess of 12 hours in one workday and for all hours worked in excess of 8 hours

12   on the seventh consecutive day worked in a workweek.  (Goodhart Dec., ¶ 3.)

13

#### 2.   Rest and Meal Breaks

14   It is TE's policy to provide non-exempt California employees rest and meal breaks.  (Pl.

15   Dep., 131:19-134:6; Ryan Dec., ¶ 4, Ex. C [at DEF0043]; Pereira Dec., ¶ 9.)  TE pays non-

16   exempt California employees for rest periods and for meal periods lasting fewer than 30 minutes.

17   (Pereira Dec., ¶ 10, Ex. A .)  Specific meal and rest break practices vary by individual business

18   unit and department, and breaks are scheduled at a local level.  (*Id.*)

19

#### 3.   Recordkeeping

20   TE provides employees with accurate, itemized wage statements with each paycheck.

21   (Goodhart Dec., ¶ 5, Ex. A.)  Specifically, these itemized statements provide, among other things,

22   the gross wages earned, the total hours worked by non-exempt employees, all deductions, net

23   wages earned, the inclusive dates for the pay period, the name of the employee and his or her

24   employee identification number, TE's name and address, and all applicable hourly rates in effect

25   during the pay period and the number of hours worked at each hourly rate.  (*Id.*)

26   / / /

27

28

[1] All deposition testimony is attached as Exhibit A to the Ryan declaration.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP

**4.     Reimbursement of Business Expenses**

TE reimburses employees for all necessary expenditures or losses incurred in the course of conducting company business.  (Pereira Dec., ¶ 12; Pl. Dep., 131:19-134:6.)  To obtain reimbursement for work-related expenses, employees in the PM department must bring the expense to TE's attention by submitting an expense report or petty cash voucher to their manager or supervisor.  (Pereira Dec., ¶ 12.)

TE provides non-exempt employees in the PM department  (electricians and mechanics) with uniforms and launders the uniforms at no cost to the employees.  (*Id.*, ¶ 17; Pl. Dep., 139:8-142:8, 144:24-145:10.)  TE also gives these employees vouchers to use to purchase work boots.  (Pereira Dec., ¶ 8.)   In 2008, the voucher amount was $120.[2]  (*Id.*)  Employees could use the voucher to purchase boots from a vendor that came on-site to the Menlo Park facility.  (Pereira Dec., ¶ 17.).  Employees could also purchase boots from someone other than an approved vendor.  (*Id.*)  If an employee decides to purchase boots from a store or vendor that does not accept the voucher, he or she may submit the receipt to management for reimbursement up to the amount of the voucher.  (*Id.*)  If an employee prefers boots costing more than the amount of the voucher, he or she is required to pay the difference.  (*Id.*)  In 2008, adequate work boots could be purchased for under $120, including from the vendor that came on-site to the Menlo Park facility.  (Harris Dec., ¶ 6.)

Electricians and mechanics in the PM department generally do not have occasion to incur mileage or travel expenses.  (Pereira Dec., ¶ 9.)  In limited instances, however, these employees may use their personal vehicles to attend off-site training.  (*Id.*)   In such cases, the employee may submit his or her mileage or travel-related expenses to management for reimbursement from petty cash.  (*Id.*)

**C.     Plaintiff's Employment at TE**

**1.     Plaintiff Is Hired to Work in a Group of Seven Electricians**

On October 20, 2008, Plaintiff began work as a non-exempt Electrician III in the PM

---

[2] Plaintiff testified in deposition that he "believes" the voucher was for $100, but conceded that the amount could have been more, he simply did not recall.  (Pl. Dep., 152:11-13.)

1   department at TE's Menlo Park facility.  (Pereira Dec., ¶ 6; Pl. Dep., 25:25-26:11, 29:12-20:22,

2   128:25-129:7.)  He reported to Armando Ablaza, his manager, and Kenneth Harris, his lead.

3   (Pereira Dec., ¶ 6; Ablaza Dec., ¶ 2; Harris Dec., ¶ 2; Pl. Dep., 27:4-28:1.)  Lynne Pereira was the

4   HR manager assigned to the CIS business unit, which included the PM department.  (Pereira

5   Dec., ¶ 4.)

6          Electricians in the PM department repair downed machinery, install machinery and safety

7   devices, and perform preventative maintenance on manufacturing equipment.  (Pl. Dep., 30:23-

8   31:4; Harris Dec., ¶ 3.)  While Plaintiff was employed with TE, the PM department was divided

9   into three shifts: Day, Swing, and Graveyard.  (Harris Dec., ¶ 4.)  During his entire employment,

10  Plaintiff exclusively worked the Day shift (6:00 a.m. to 2:30 p.m.) in a group of approximately

11  seven electricians.  (Pl. Dep., 106:17-107:7, 107:12-14, 109:8-13.)

12         Plaintiff earned $22 per hour and was not eligible to earn commissions or other non-

13  discretionary incentive pay.  (Pl. Dep., 64:8-65:15; Pereira Dec., ¶ 8.)  For the entire nine weeks

14  of his employment, Plaintiff was in training, which meant that at all times he worked the Day

15  shift and was not eligible to earn a shift differential.[3]  (Pl. Dep., 28:7-29:11; Ablaza Dec., ¶ 3;

16  Pereira Dec., ¶ 8.)

17                    **2.   Plaintiff Incurs No Work-Related Expenses**

18         Plaintiff admits that TE covered all his work-related expenses.  (Pl. Dep., 167:18-21.)  The

19  undisputed facts support this.

20         **Mileage.**  Plaintiff only worked at the Menlo Park facility and did not participate in any

21  off-site training.  (Pl. Dep.., 32:2-32:16, 94:25-95:21.)  Just once, he traveled off-site during work

22  hours to undergo a routine medical test for radiation exposure, but Harris drove Plaintiff to the

23  testing clinic in a company truck, and Plaintiff was paid for his time.  (Pl. Dep., 32:17-35:9,

24

25          [3] Plaintiff was hired with the goal that he would ultimately work the Graveyard shift,
26  which qualifies for a shift differential.  (Ablaza Dec. ¶ 3).  However, first, Plaintiff had to
    complete a probationary training period working the Day shift.  (*Id.*, Pl. Dep. 107:5-108:23,
27  127:10-128:11.)  Plaintiff never completed this training period, and never worked any shift other
    than the Day shift.  (Pl. Dep., 107:5-108:23.)  Accordingly, as he admits, he was never eligible to
28  earn a shift differential.  (*Id.*)

102:18-103:16.)

**Uniforms.** TE provided Plaintiff with ten sets of uniforms (shirts and pants), and laundered the uniforms at no cost to Plaintiff. (Pl. Dep., 139:8-142:8,144:24-145:10; Pereira Dec., ¶ 16.) TE also gave Plaintiff a $120 voucher to use to purchase work boots. (Pl. Dep., 145:2-146:17; Pereira Dec., ¶ 18.)[4] Plaintiff used this voucher to purchase boots for approximately $126. (Pl. Dep., 146:8-17.) Plaintiff did not seek reimbursement for the approximately $6 difference. (Pl. Dep., 152:14-22.) He further testified that he was able to keep the boots after his employment terminated. (*Id.*, 153:3-13.)

**Training.** Plaintiff's job duties did not require him to participate in external training, and he never did so. (*Id.*, 94:25-95:21; Ablaza Dec., ¶ 4.)

**Tools.** TE provided Plaintiff with all the tools necessary for him to complete his work, and Plaintiff knew where to obtain these tools. (Ablaza Dec., ¶ 5; Harris Dec., ¶ 7; Pl. Dep., 154:20-155:1, 159:6-20.) He testified at deposition that he knew there was a location at the Menlo Park facility where he could get tools, and that if he did not have a tool that he needed, he could go to that location with Harris' assistance to get the tool he needed. (Pl. Dep., 159:6-13). If that location did not have a tool he needed, the tool could be special ordered. (Harris Dec., ¶ 8; Ablaza Dec., ¶ 7.)[5]

**3.   Plaintiff Never Misses a Meal or Rest Break**

Plaintiff admits that no one at TE ever instructed him not to take rest or meal breaks. (Pl. Dep., 206:4-207:18.) Furthermore, he never missed a meal or rest break for any reason, including due to inadequate staffing. (*Id.*, 119:1-6, 163:12-15, 217:13-22.)

**Morning Rest Break.** As noted above, employees in the PM department Day shift were scheduled to work from 6:00 a.m. to 2:30 p.m. (Pereira Dec., ¶ 15; Pl. Dep., 107:12-14.) While

---

[4] *See supra* note 2.

[5] In deposition, Plaintiff claimed that he brought in his own multimeter (an electronic measuring instrument) because TE did not give him one and he was used to using that particular type of multimeter. (Pl. Dep., 69:16-18, 70:6-18; 156:16-22.) It was not necessary for Plaintiff to bring his own multimeter, because TE customarily provides electricians in the PM department with a multimeter among other tools, and Harris recalls providing Plaintiff with a multimeter and other tools at the start of Plaintiff's employment. (Ablaza Dec., ¶ 5; Harris Dec., ¶ 8; Ex. A.)

1  Plaintiff was employed at TE, electricians in the PM department took their morning rest break

2  from 9:00 to 9:15 a.m.[6]  (Pl. Dep., 115:25-117:12; Harris Dec., ¶ 11.)  This was a paid break.  (Pl.

3  Dep., 116:8-10; Harris Dec., ¶ 11; Pereira Dec., ¶ 15.)  Electricians were allowed to take their

4  morning rest break at a different time, pending approval from their manager or supervisor.

5  (Harris Dec.,  ¶ 13; Ablaza Dec., ¶ 6.)  Plaintiff did not miss his morning rest break while

6  employed at TE.  (Pl. Dep., 119:1-6.)

7        **Lunch and Afternoon Rest Break.**    Electricians in the PM department took a lunch

8  break together from 11:50 a.m. to 12:20 p.m.  (Pl. Dep., 119:19-122:8.)  From 12:20 p.m. to

9  12:30 p.m., the electricians took a paid afternoon rest break.  (*Id.*; Pereira Dec., ¶ 16.)  Plaintiff

10  took a lunch and afternoon break each day he worked.  (Pl. Dep., 163:12-15.)[7]

11        Though it was the practice of the Day shift electricians and mechanics to combine their

12  lunch and afternoon breaks, TE policy did not mandate this, and employees were free to take their

13  breaks at other times upon approval by their manager or supervisor.  (Pereira Dec., ¶ 16; Ablaza

14  Dec., ¶ 6; Harris Dec., ¶ 3.)[8]  Plaintiff, however, never requested to take his afternoon rest break

15  on a different schedule.  (Pl. Dep., 122:5-8.)

16        **4.    Plaintiff Is Paid for All Time He Worked and Receives Accurate Pay
             Stubs**
17

18        TE paid Plaintiff for all the time he worked, including overtime.  (Goodhart Dec., ¶ 7; Pl.

19  Dec., 112:18-22.)  Indeed, Plaintiff cannot identify a single instance in which he was not paid for

20  all the time he worked.  (Pl. Dep., 208:11-13, 211:24-212:10.)

21        Plaintiff also admits he has no reason to question the accuracy of his pay stubs; indeed, he

22  admits he assumed they were accurate.  (Pl. Dep., 207:23-208:10, 219:10-221:16; Ryan Dec., ¶ 5,

23  _____

24        [6] In deposition, Plaintiff testified that he thought his morning break was 10 minutes long,
      but admitted that it could have been longer, he just did not recall.  (Pl. Dep., 115:25-117:12.)

25        [7] Electricians in the PM department at the Menlo Park facility did not clock out for their
26  lunch breaks; rather, the Kronos system was automatically coded for a 30-minute lunch break.
      (Pereira Dec., ¶ 14.)

27        [8] This combined meal and rest break schedule (as opposed to two separate breaks) was
      established before Plaintiff began his employment with TE based on a vote by the PM department
28  employees.  (Harris Dec., ¶ 12.)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP

Ex. D.)  In any event, Plaintiff never complained to TE that any pay stub was inaccurate.  (Pl. Dep., 208:6-10.)

### D.     Plaintiff's Termination

#### 1.     Plaintiff's Last Day of Work Is Monday, December 22, and He Is Officially Terminated on Tuesday, December 23

Early in his shift on Monday, December 22, 2008, Harris and Ablaza met with Plaintiff and informed him that his employment was terminated for poor attendance.  (Harris Dec., ¶ 14; Ablaza Dec., ¶ 7.)  Plaintiff did not work a full day on December 22 and performed no work thereafter.  Rather, he departed TE's premises shortly after the termination meeting and did not return.  (Ablaza Dec., ¶ 8; Harris Dec., ¶ 15.)  Although he was told of his termination on December 22, 2008, TE made the termination effective on Tuesday, December 23, 2008.  (Pereira Dec., ¶ 7; Ryan Dec., ¶ 6, Ex. E [at ¶¶ 1(a) & (b)].)

**TE Processes Plaintiff's Final Paychecks.**  On Monday, December 22, Tonya Siegfried, a Payroll employee, processed two final paychecks for Plaintiff.  (Siegfried Dec., ¶ 4.)  The first covered the pay period of December 8 to 21 and was for $1,403.93.  (Goodhart Dec., ¶¶ 9,10, Ex. B.)  The second covered eight hours for December 22, eight hours for December 23, and all of Plaintiff's accrued, unused vacation and personal time (including any vacation and personal time pay he would have accrued had he worked through January 4, 2009), a total of $753.76.  (*Id.*, ¶¶ 9,10, Ex. B.)  Together, these paychecks included all amounts due Plaintiff as of his official termination date, December 23, 2008 (plus some additional vacation pay).  (*Id.,* ¶10.)

#### 2.     TE Sends Plaintiff's Final Checks Via Priority Overnight Mail For Delivery On His Termination Date

On Monday, December 22, Siegfried sent the two final paychecks to Plaintiff's home address by FedEx "Priority Overnight" mail.  (Siegfried Dec., ¶ 5; Pl. Dep., 6:5-7:10.)[9]  A FedEx proof-of-delivery confirms that TE shipped the paychecks that day.  (Ferrara Dec., ¶ 3, Ex. A.)

---

[9] Generally, packages shipped "Priority Overnight" to United States destinations will arrive at their destination on the following day (Sundays excluded).  (Ferrara Dec., ¶ 2.)

1    TE's Payroll Department routinely uses FedEx's Priority Overnight service. (Goodhart

2    Dec., ¶ 12.) In its experience, packages sent through this service generally arrive at their

3    destination by the following business day. (Id.) Based on FedEx's policies and Payroll's

4    experience with FedEx, it was TE's intent and understanding that FedEx would deliver the

5    Priority Overnight package by the following business day, December 23, the date of Plaintiff's

6    official termination. (Siegfried Dec., ¶¶ 5,6; Goodhart Dec., ¶ 12.) Due to circumstances out of

7    TE's control, however, the Priority Overnight package was not delivered until the following day,

8    December 24, 2008.[10] (Ferrara Dec., ¶¶ 3, 5, Ex. A; Ryan Dec., ¶¶ 6, 7, Exs. E [at ¶ 1(e)], F.)

9                    **3.    Plaintiff is Overpaid $193.54 in January 2009**

10   TE sent Plaintiff a third post-termination check for $193.54 on January 23, 2009. (Pl.

11   Dep., 51:22-55:15; Ryan Dec., ¶ 3, Ex. B; Goodhart Dec., ¶ 11, Ex. C.) The check was an

12   overpayment to Plaintiff of money that he was not due, and was not payment for work performed

13   by Plaintiff.[11] (Goodhart Dec., ¶ 11.) Plaintiff admits he received this check, but he did not know

14   what it was for. (Pl. Dep., 55:1-15.) Plaintiff did not contact TE to inquire about the check;

15   instead, he cashed it. (Pl. Dep., 55:1-57:16.)[12]

16            **E.    Plaintiff's Lawsuit**

17   Plaintiff brings six causes of action against TE on behalf of himself and a putative class.[13]

18   These include: (1) Violation of Labor Code § 226.7; (2) Failure to Pay Overtime Wages; (3)

19   Violation of Labor Code §§ 201-204; (4) Violation of Labor Code § 226; (5) Violations of Labor

20

21   _____

22            [10] FedEx's records indicate that the package was delayed due to inclement weather.
     (Ferrara Dec., ¶ 5.)

23            [11] Through an administrative oversight, the payroll system paid Plaintiff for additional
     time that he did not work. (Goodhart Dec., ¶ 11.)

24            [12] Plaintiff claims he received a fourth check "a couple of months" after his termination.
     (Pl. Dep., 56:11-57:23.) He claims he cashed it, but he does not recall the amount, nor did he
25   retain the pay stub. (Id.) TE has no record of this check. (Goodhart Dec., ¶ 13.)

26            [13] Plaintiff's original Complaint asserted seven causes of action; however, the parties have
     stipulated to dismiss one cause of action for violation of Labor Code Section 227.3. Plaintiff filed
27   the stipulation and proposed First Amended Complaint ("Compl.") on September 14, 2010. In
     the event that the Court does not issue an order pursuant to the parties' stipulation, Defendant
28   hereby reserves the right to supplement its briefing to address Plaintiff's Section 227.3 claim.

1    Code § 2802; and (6) Violations of Business and Professions Code § 17200.[14]  In the Complaint,

2    Plaintiff defines the putative class as:

> "All past and current non-exempt employees of [TE] employed in
> California from December 24, 2005 through the present who were
> provided wage statements," "[a]ll past and current employees of
> [TE], classified by [TE] as non-exempt employees and employed in
> California from December 24, 2005 through the present, who
> worked more than 8 hours in a workday and/or more than 40 hours
> in a workweek, "[a]ll past and current employees of [TE], classified
> by [TE] as non-exempt employees and employed in California from
> December 24, 2005 through the present, who were paid overtime
> wages," "[a]ll past and current employees of [TE], classified by
> [TE] as non-exempt employees and employed in California from
> December 24, 2005 through the present, who worked shifts of more
> than 6 hours," "[a]ll past employees of [TE] employed in California
> from December 24, 2005 through the present who, from [TE's]
> records, received any form of wages beyond the date they were
> terminated," and "[a]ll past employees of [TE] employed in
> California from December 24, 2005 through the present who, from
> [TE's] records, received any form of wages beyond 72 hours from
> the date they were terminated."

13    (Compl., ¶ 17.)[15]

14    **III.**   **THE COURT SHOULD GRANT SUMMARY JUDGMENT**

15        **A.**   **Plaintiff Cannot Prove Any Violation of Section 226.7**

16        Plaintiff alleges that TE violated Section 226.7 by (1) staffing its facilities in a manner

17    that prevented employees from taking meal breaks; (2) failing to provide sufficient paid rest

18    period time; (3) failing to schedule meal periods and record the beginning and end of meal

19    periods; and (4) combining meal and rest periods into one set amount of unpaid time.  (Compl.,

20    ¶¶ 34-35.)  Plaintiff seeks to recover all meal period wages allegedly owed, as well as waiting

21    time penalties under Labor Code Section 203 for alleged failure to timely pay such wages due.

22    (*Id.*, ¶ 37.)  However, Plaintiff's own deposition testimony flatly contradicts nearly all of these

23    allegations, and as a matter of law, his claim under Section 226.7 fails.

24    / / /

---

[14] Unless otherwise noted, all code references are to the California Labor Code.

[15] Plaintiff has not moved for class certification.  TE therefore directs this motion to
Plaintiff's individual claims, but reserves the right to oppose class certification and/or file
dispositive motions relating to putative class member claims.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP

1  **1.    Plaintiff's Admissions Doom His Meal and Rest Break Claim**

2  Plaintiff's various deposition admissions easily defeat his meal and rest break claim.

3  First, Plaintiff's testimony flatly contradicts his allegation in the Complaint that he was denied

4  meal breaks due to inadequate staffing.  (Compl., ¶ 35.)  Plaintiff admitted at deposition that he

5  always took his meal and rest breaks, and specifically testified that he was never deprived of

6  breaks due to inadequate staffing.  (Pl. Dep., 119:1-6, 163:12-15, 217:13-22.) [16]

7  Second, Plaintiff alleges that TE failed to provide him sufficient time on his rest periods.

8  Again, this allegation is directly contradicted by Plaintiff's deposition testimony.  Plaintiff admits

9  that his paid rest breaks were at least 10 minutes long, and he always took his rest breaks. [17]  (Pl.

10  Dep., 115:25-117:12, 120:18-121:23, 163:12-15.)  Thus, Plaintiff's allegation that he was not

11  provided sufficient paid rest periods fails.  *See* IWC Order No. 4-2001, § (12)(A) (requiring paid

12  10 minute rest break per four hours of work or major fraction thereof).

13  Third, Plaintiff alleges in the Complaint that TE violated Section 226.7 by failing to

14  schedule meal and rest breaks.  (Compl., ¶ 35.)  Yet again, this allegation is squarely contradicted

15  by Plaintiff's deposition testimony.  Plaintiff testified that he had regularly scheduled breaks,

16  including one paid rest break in the morning at least 10 minutes long and a combined 30 minute

17  meal break and 10 minute paid rest break in the afternoon.  (Pl. Dep., 115:25-117:12, 119:1-6,

18  120:21-121:23, 163:12-15.)  As noted above, Plaintiff never missed any of his meal or rest

19  breaks.  (Pl. Dep., 119:1-6, 163:12-15.)

20  

21  [16] Federal courts interpreting California law have consistently held that employers need only make breaks available to employees, not ensure that employees take them.  *See, e.g.*, *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1086, 1088-89 (N.D. Cal. 2007) (Walker, J.) (granting

22  summary judgment to employer and holding that employers need only make meal and rest breaks available); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008) (Fischer, J.)

23  (holding that employers have "an obligation to make breaks available, rather than to force employees to take breaks"); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal.

24  2008) (Hamilton, J.) (granting summary judgment to employer, finding that employers "need only make [meal and rest breaks] available, not ensure they are taken"); *Kenny v. Supercuts, Inc.*, 252

25  F.R.D. 641, 646 (N.D. Cal. 2008) (Breyer, J.) (holding that the Labor Code "does not require an employer to ensure that an employee take a meal break").  However, here, Plaintiff admits that he

26  took all of his meal and rest breaks, so whether TE met its obligation to provide breaks to Plaintiff is not at issue.  (Pl. Dep., 119:1-6, 163:12-15, 217:13-22.)

27  

28  [17] The morning rest break was in fact 15 minutes long.  (Harris Dec., ¶ 11; Pl. Dep., 117:2-12.)

Plaintiff also alleges that TE violated Section 226.7 by failing to record the beginning and end of meal periods.  (Compl., ¶ 35.)  However, Section 226.7 does not require employers to record meal periods.  *See* Cal. Lab. Code § 226.7.  Rather, Section 226.7 simply requires employers to provide breaks in accordance with the applicable Wage Order(s).  *Id*.  As outlined above, TE provided Plaintiff meal breaks in accordance with the applicable Wage Order: Plaintiff was provided an unpaid 30-minute, duty-free meal period after working for five hours.  *See Murphy v. Kenneth Cole Prod'ns, Inc.*, 40 Cal. 4th 1094, 1104 (2007) ("Pursuant to IWC wage orders, employees are entitled to an unpaid 30-minute, duty-free meal period after working for five hours...."); IWC Order No. 4-2001, § (11)(A); Cal. Lab. Code § 226.7.[18]

Finally, Plaintiff alleges that TE improperly combined his meal and rest period into one set amount of unpaid time.  (Compl., ¶ 34.)  Yet again, Plaintiff's deposition testimony disproves this allegation.  While Plaintiff took forty minute combined meal and afternoon rest breaks, he admits that while the 30 minutes allocated to the meal break were unpaid, he was paid for the 10 minutes allocated to the afternoon break.  (Pl. Dep. ¶ 120:21-121:23.)  The applicable IWC Wage Order provides that rest breaks must be paid, but 30 minute meal periods where the employee is relieved of all duty may be unpaid.  IWC Order No. 4-2001, §§ (11)(A) & (12)(A).  There is thus no evidence to support Plaintiff's allegation that TE violated Section 226.7 by improperly combining meal and rest periods into one set amount of unpaid time.[19]

---

[18] As noted above Plaintiff testified at deposition that he never missed a meal or rest break for any reason while employed with TE.  (*Id.*, 119:1-6, 163:12-15, 217:13-22.)

[19] To the extent that Plaintiff implies there was something unlawful about the fact that the unpaid lunch break and the paid afternoon rest break were combined, there is nothing in the applicable law that prohibits this.  The relevant sections of the Labor Code and the applicable Wage Order simply proscribe requiring an employee to work during a meal or rest period, address the hours an employee must work to earn a meal or rest break, and address the timing of rest breaks.  *See* Cal. Lab. Code §§ 226.7(a) & 512(a); IWC Order No. 4-2001, §§ (11)(A) & (12)(A).  None of these provisions mention, much less proscribe combining breaks.

Indeed, Section 226.7 provides that "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  Cal. Lab. Code. § 226.7(a).  Regarding meal periods, the applicable Wage Order provides, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."  Industrial Welfare Commission ("IWC") Order No. 4-2001, § (11)(A); *see also* Cal. Lab. Code § 512(a) (providing substantively the same).  Regarding rest

### 2.   Plaintiff is Not Entitled To Waiting Time Penalties Under Section 203

As a tag-along to the meal and rest break claim, Plaintiff seeks penalties under Section 203 for alleged failure to pay him all meal period wages earned pursuant to Section 226.7. (Compl., ¶ 37.) Section 203 prescribes penalties for "willful" failure to pay final wages. Cal. Lab. Code § 203. However, as outlined above, Plaintiff cannot establish that TE failed to pay him any wages due under Section 226.7, much less that any such alleged failure was willful. *See* Section III(A)(1) above. Accordingly, this claim fails.

### B.   Plaintiff's Overtime-Related Claims Should Be Dismissed

Plaintiff brings various overtime-related claims pursuant to Labor Code Section 1194. He claims TE did not pay him overtime pay for overtime worked, did not include "paid non-discretionary commissions/bonuses and other incentive pay" into the regular rate when calculating his overtime pay, and did not pay him overtime pay owed him immediately upon terminating his employment. (Compl., ¶¶ 40-43.) Plaintiff also seeks waiting time penalties under Section 203 for the alleged unpaid overtime wages. (*Id.*, ¶ 45.) By Plaintiff's admission, each of these claims fails.

Significantly, Plaintiff admits that he was paid for all the time he worked. (Pl. Dep., 112:18-22.) Indeed, when pressed on whether there was a time that he was not paid for all the time he worked, he could not identify a single instance. (*Id.*, 208:11-13, 211:24-212:10.) Thus,

---

periods, the Wage Order provides, "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Id.*, at § (12)(A).

Plaintiff's combined meal and rest break does not run afoul of these provisions. Plaintiff worked from 6:00 a.m. to 2:30 p.m., with the combined break running from 11:50 a.m. to 12:30 p.m. (Pl. Dep., 107:12-14, 119:19-122:8.). Plaintiff was provided a 30 minute unpaid meal break after working 5 hours, and an afternoon rest break in the middle of the second four hours of work. (Harris Dec., ¶ 12; Pereira Dec., ¶ 16.) Because neither the Labor Code nor the Wage Orders prohibit the combining of meal and rest breaks or the timing of the combined break in this case, there is no authority to support Plaintiff's claims regarding the combined breaks, and summary judgment is warranted in TE's favor.

Moreover, even if the practice of combining the meal and afternoon rest breaks was somehow unlawful (which it is not), it is undisputed that Plaintiff was not required to take these breaks together; rather, he could take his breaks at other times with approval from management. (Pereira Dec., ¶ 16; Harris Dec., ¶ 13; Ablaza Dec., ¶ 6.) Plaintiff never requested to take his afternoon break on a different schedule. (Pl. Dep., 122:5-8.)

1   his claims that he was not paid overtime due him and not paid overtime upon termination lack

2   merit.

3          Moreover, because Plaintiff was not entitled to commissions or other non-discretionary

4   incentive pay, he cannot show that TE unlawfully excluded any such amounts when calculating

5   his regular rate of pay.  (Pereira Dec., ¶ 8.)  And it is undisputed that TE in fact paid overtime at

6   the applicable rate.  (Goodhart Dec., ¶ 7; Pl. Dec., 112:18-22.)  Because Plaintiff cannot establish

7   that he is entitled to any unpaid overtime wages, and as discussed below, TE made a good faith

8   effort to ensure that Plaintiff was paid all wages owed him upon the termination of his

9   employment, he cannot establish any entitlement to waiting time penalties under Section 203, and

10  TE is entitled to judgment on this claim.  *See infra* § III.C.

11         **C.     Plaintiff's Claim for Violation of Sections 201-204 Lacks Merit**

12         Plaintiff also brings a claim for violations of Sections 201 to 204, which dictate the timing

13  for payment of wages, as well as a claim for waiting time penalties under Section 203.  (Compl.,

14  ¶¶ 49-52.)  Section 201 provides that the wages of a terminated employee must be paid

15  immediately.  Cal. Lab. Code § 201 (a).  Section 204 provides that wages are payable to existing

16  employees twice per calendar month.  *Id.*, § 204(a).

17              **1.     Plaintiff Presents No Evidence of Any Section 204 Violation Nor Can
                         He**
18

19         TE paid Plaintiff within the timelines set by Section 204.  TE paid Plaintiff bi-weekly

20  during the course of his employment. (Goodhart Dec., ¶ 4.)  Plaintiff offers <u>no evidence</u> to dispute

21  that this is the case.  Judgment is thus warranted in TE's favor on this claim.

22              **2.     TE Took All Reasonable Steps Necessary To Timely Pay Plaintiff His
                         Final Wages**
23

24         Where an employer's failure to timely pay wages upon termination is "willful," Section

25  203 provides that the employer may be subject to a penalty of up to thirty days of the terminated

26  employee's wages.  Cal. Lab. Code § 203.  Of course, whether an employer may be subject to a

27  Section 203 penalty depends on whether the employer actually failed to timely pay any wages

28  owed: "It must be shown that the employer owes the debt and has failed to pay it."  *DLSE*

1  *Enforcement Policies & Interpretations Manual* ("DLSE Manual"), § 4.2.2 (emphases added);

2  *see also Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981) ("The statute . . .

3  contemplates that the penalty shall be enforced against an employer who is at fault. It must be

4  shown that he owes the debt and refuses to pay it. He is not denied any legal defense to the

5  validity of the claim.") (quoting *Manford v. Singh*, 40 Cal. App. 700, 702-03 (1919) (discussing

6  the predecessor statute)).

7        Here, the undisputed evidence demonstrates that TE acted in good faith by taking all

8  reasonable steps necessary to deliver the final paychecks to Plaintiff on his official termination

9  date. First, TE did not terminate Plaintiff's employment and kept him on the payroll until

10  Tuesday, December 23, even though his last day of work was Monday, December 22. (Goodhart

11  Dec., ¶ 8.) TE then arranged with FedEx to deliver the checks to Plaintiff's residence by Priority

12  Overnight mail, with the intent and belief that FedEx would deliver the checks on December 23,

13  Plaintiff's official termination date. (Siegfried Dec., ¶ 5.) This belief was based on TE's

14  extensive experience with shipping paychecks by FedEx Priority Overnight. (Goodhart Dec., ¶

15  12; Siegfried Dec., ¶ 6.) That the checks were not delivered until December 24, one day later,

16  was not due to any fault of TE, but rather inclement weather and the inner-workings of FedEx

17  (over which TE, obviously, lacks control). (Ferrara Dec., ¶ 5.) TE therefore took every

18  reasonable step necessary to deliver Plaintiff's final paychecks in a timely manner.

19        Plaintiff cannot proffer even a scintilla of evidence that the one-day delay caused by

20  FedEx was due to any willful conduct by TE. The level of proof required to show willful failure

21  to pay wages under Section 203 is higher than simple negligence. *See* DLSE Manual § 4.2 (citing

22  8 Cal. Code of Regs. § 13520). Rather, "willful" conduct requires intentional wrongdoing: "A

23  willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an

24  employer <u>intentionally fails</u> to pay wages to an employee when those wages are due." *Id.*

25  (emphasis added); *see also Barnhill*, 125 Cal. App. 3d at 8-9 (employer's good faith belief that it

26  had setoff rights negated finding that nonpayment of wages was willful). Here, TE diligently

27  arranged for the checks to be timely delivered and reasonably expected that FedEx would do so.

28  Plaintiff thus cannot show that the one-day delay was due to even simple negligence by TE, let

1  alone "willfulness."

2      Accordingly, the one-day delay in Plaintiff's receipt of the checks cannot be considered

3  "willful," even under the most lenient legal standard, and judgment should be entered in TE's

4  favor on Plaintiff's Section 203 claim.

5          **3.      In Any Event, TE Has Already Compensated Plaintiff For the One-
                      Day Delay**

6

7      Even assuming, however, that TE willfully delayed in sending the checks, it has already

8  compensated Plaintiff for more than one additional day of pay, the maximum penalty for a one-

9  day delay under Section 203.  *See* Cal. Lab. Code § 203(a) (providing that, where employer

10  willfully withholds final wages, discharged employee's wages shall continue at same rate from

11  due date until paid).  On January 23, 2009, TE inadvertently overpaid Plaintiff by sending him a

12  third post-termination check for $193.54, which he cashed.  (Pl. Dep., 51:22-57:16; Ryan Dec.,

13  ¶ 3, Ex. B; Goodhart Dec., ¶ 11, Ex. C.)  This amount exceeded the $176 to which Plaintiff would

14  have been entitled under Section 203 had the delay in delivering Plaintiff's final wages been

15  willful.[20]

16      Therefore, even assuming that FedEx's delay somehow equates to willful conduct on the

17  part of TE, Plaintiff had already received more than sufficient compensation for the delay.[21]

18  Accordingly TE is entitled to summary judgment on Plaintiff's Section 203 claim.

19          **D.      Plaintiff's Claim for Violation of Labor Code Section 226 is Baseless**

20      Plaintiff also claims TE violated Section 226 by failing to maintain accurate payroll

21  records.  (Compl., ¶ 54-57.)   Section 226 requires an employer to provide each employee with an

22  itemized statement showing, among other things, a non-exempt employee's gross wages earned,

23  total hours worked, deductions, net wages earned, the inclusive dates of the period for which the

24  employee is paid, the name of the employee and his or her employee identification number, the

25  _____

26      [20] At his pay rate of $22 per hour, Plaintiff would be entitled to at most $176 for eight
    hours of work.  *See* Cal. Lab. Code § 203.  (Pl. Dep., 64:8-65:15.)

27      [21] Moreover, according to Plaintiff, TE overcompensated him by an even greater amount
    by sending him a *fourth* post-termination check (though TE has no record of this check).  (Pl.
28  Dep., 56:11-57:23; Goodhart Dec., ¶ 13.)

1    name and address of the legal entity that is the employer, and all applicable hourly rates in effect

2    during the pay period and the corresponding number of hours worked at each hourly rate by the

3    employee.  Cal. Lab. Code § 226(a).  To recover damages under that section, an employee must

4    prove he or she suffered "injury as a result of a knowing and intentional failure by an employer to

5    comply" with the section.   Cal. Lab. Code § 226(e).

6         Presumably, Plaintiff brings this claim on the grounds that he was not paid for all wages

7    owed.  However, as noted above, he admits that he was paid for all time worked, so this claim is

8    baseless.  Further, Plaintiff admits he has no reason to believe the pay stubs he received while

9    employed by TE were in any way inaccurate; indeed, he admits he assumed they were accurate.

10   (Pl. Dep., 207:23-208:13, 219:10 -221:16; Ryan Dec., ¶ 5, Ex. D.)  He also testified that he was

11   unaware of any time worked that he was not paid for.  (Pl. Dep., 207:23-208:13, 211:24-212:10.)

12   In any event, Plaintiff never complained to TE that any pay stub was inaccurate.  (Pl. Dep.,

13   207:23-208:13.)

14        To the extent that Plaintiff alleges that the paychecks he received failed to comply with

15   the technical requirements of Section 226, this is not supported by the facts.  It is undisputed that

16   TE provides employees (including Plaintiff) with itemized wage statements including all of the

17   applicable information outlined in Section 226.  (Goodhart Dec., ¶ 5, Ex. A.)

18        There is thus no evidence to suggest that Plaintiff ever received inaccurate pay stubs,

19   much less that he suffered any injury resulting therefrom.  Accordingly, judgment should be

20   entered in TE's favor on this claim.

21        **E.    Plaintiff Lacks Evidence of Any Section 2802 Violation**

22        Plaintiff claims TE failed to reimburse him for work-related expenses, including "mileage,

23   uniforms, [and] training meetings," in violation of Section 2802.  (Compl., ¶¶ 61-62.)  Section

24   2802 requires an employer to "indemnify his or her employee for all necessary expenditures or

25   losses incurred by the employee in direct consequence of the discharge of his or her duties."  Cal.

26   Lab. Code § 2802(a).  Plaintiff's claim is easily dispensed with, because he admits TE covered all

27   of his work-related expenses.  (Pl. Dep., 167:18-21.)

28        **Mileage.**   Plaintiff only worked at the Menlo Park facility, and he did not participate in

- 17 -

1    any off-site training.  (Pl. Dep.., 32:2-32:16, 94:25-95:21.)  On the one occasion he was required

2    to travel off-site during work hours, Harris drove Plaintiff in a company truck, and Plaintiff was

3    paid for his time.  (Pl. Dep., 32:17-35:9, 102:18-103:16.)  Accordingly, Plaintiff  did not incur

4    any mileage or other travel-related expenses for which he would be entitled to reimbursement.

5         **Uniforms.**  Plaintiff admits TE paid for his uniforms, that he was not required to pay for

6    any part of his uniforms, and that TE laundered the uniforms at no cost to him.  (Pl. Dep., 139:8-

7    142:8, 144:24-145:10.)  Moreover, he admits TE provided him a $120 voucher to use to purchase

8    work boots.  (*Id*., 144:24-146:17.)  Though Plaintiff could have purchased boots for the amount of

9    the voucher or less, he chose to buy boots for approximately $126.  (Harris Dec., ¶ 6; Pl. Dep.,

10   145:2-146:15.)  Having voluntarily chosen to spend more than necessary or required by TE,

11   Plaintiff cannot now claim that he is entitled to reimbursement for the difference.  In any event,

12   Plaintiff did not seek reimbursement for the approximately $6 difference.  (Pl. Dep., 152:20-22.)

13   Moreover, Plaintiff was able to keep the boots after his employment terminated.  (*Id.*, 153:3-13.)

14   For all of these reasons, Plaintiff lacks evidence that TE failed to reimburse him for uniform

15   expenses.

16        **Training.**  Plaintiff also lacks evidence that he incurred any expenses related to training,

17   let alone that TE failed to reimburse him for such training.  He admits that all his training

18   occurred on-site, so he would not have incurred any costs in traveling to such meetings.  (*Id.*,

19   94:25-95:21.)  Indeed, Plaintiff's job did not require him to participate in any external training.

20   (Harris Dec., ¶ 10.)  There is simply no evidence that TE failed to reimburse Plaintiff for

21   training.[22]

22

23   ―――――――――――――

24       [22] Though not alleged in the Complaint, Plaintiff also cannot state a section 2802 claim
      based on his choice to use his own multimeter at work.  It is undisputed that TE provided Plaintiff

25   the tools necessary for him to complete his work and that he knew where to go to obtain tools he
      did not have if needed.  (Pl. Dep., 154:20-155:1, 159:6-20; Harris Dec., ¶ 7.)  Though he claims

26   he used his own multimeter (which he had owned for four years), it is undisputed that TE
      provides multimeters.  (Pl. Dep., 156:16-22; 157:17-159:20 68:25-69:5; Harris Dec., ¶ 8, Ex. A;

27   ablaze Dec., ¶ 5.)  Therefore, it was not "necessary" for Plaintiff to bring his own tools to work,
      and TE was not required to reimburse him for them.  *See* Cal. Lab. Code § 2802(a) (limiting

28   obligation of employer to indemnify employee to "necessary" expenditures or losses).

F.   **Plaintiff's Section 17200 Claims Are Derivative And Thus Fail**

Finally, Plaintiff claims that TE engaged in "unfair and unlawful business practices" in violation of California Business and Professions Code § 17200 ("Section 17200"). (Compl., ¶¶ 65-70.) Section 17200 "borrows" violations of other laws and creates an additional remedy for such violations. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1997). Thus, "[w]here a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a [Section 17200] claim either." *Newson v. Countrywide Home Loans, Inc.*, 2010 WL 2034769, 8 (N.D. Cal. 2010) (Armstrong, J.); *see also Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) (plaintiff failed to state claim for relief under Section 17200 where there was no violation of underlying law).

Plaintiff's Section 17200 claim incorporates the claims set forth in his first five causes of action. (Compl., ¶¶ 65-70.) Thus, for the reasons discussed above, his Section 17200 claim likewise fails, and TE is entitled to summary judgment on this claim.

G.   **The Putative Class Claims Should Be Dismissed Without Prejudice**

Standing is a threshold jurisdictional requirement. To have standing, a plaintiff must allege (1) that he has suffered an injury in fact; (2) that the injury is fairly traceable to the action of the defendant; and (3) that the injury will likely be redressed with a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). This threshold requirement applies to class representatives in class actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (class representative must allege and show that he or she personally has a redressable injury).

When a class representative lacks standing to bring his claims, the appropriate remedy is dismissal of the entire action. *See O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) (" [I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) ("[W]here the sole named plaintiff 'never had standing' . . . and where 'she never was a member of the class she was named to represent,' the case must be remanded with instructions to

1 dismiss.") (citations omitted).[23]

2      Here, Plaintiff fails to assert a single viable claim.  Because he can show no actionable

3 injury and no "genuine and existing controversy" involving any present rights, Plaintiff lacks

4 standing to pursue any claims on behalf of the putative class, and the claims of the putative class

5 members should be dismissed without prejudice.  *See Lierboe*, 350 F.3d at 1023 (vacating class

6 certification and remanding with instructions to dismiss class claims because sole named plaintiff

7 could not state claim for relief); *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir.1997) (named

8 plaintiffs' failure to assert injury in fact required dismissal of claims of uncertified class).[24]

9 / / /

10 / / /

11 / / /

12 / / /

13 / / /

14 / / /

15 / / /

16 / / /

17 / / /

18

---

19      [23] The instant matter is distinguishable from the line of cases that address a class

20 representative who has standing at the outset, but loses standing after class certification has been
granted.  *See, e.g., Gluth v. Kangas*, 951 F.2d 1504, 1509 (9th Cir. 1991) (class representative

21 prisoner's subsequent transfer to another prison did not moot his claim challenging prison law
library access policy because he had standing at the outset of case and at the time of

22 certification).

23      [24] In any event, Plaintiff's deposition admissions make clear that he could not adequately
represent the claims of the putative class, even if he somehow did have standing.  For instance, he

24 admits that his knowledge of meal and rest break procedures is limited to the small group of
electricians and mechanics who worked the day shift in the PM department in Menlo Park.  (Pl.

25 Dep., 106:17-107:7, 122:24-123:2, 123:17-24, 126:23-127:2.)  While TE's company-wide policy
is to provide meal and rest breaks to employees in accordance with applicable law, the particulars

26 concerning how and when employees take meal and rest breaks vary by business unit and
department.  (Pereira Dec., ¶ 10.)  Moreover, HR Manager Pereira is unaware of any group (other

27 than the electricians and mechanics on the Day shift in the PM department at the Menlo Park
facility) who combined their lunch and afternoon rest breaks, so Plaintiff's knowledge about the

28 break procedures employed by the putative class of California employees is severely limited.
(*Id.*, ¶ 16.)

- 20 -

1   **IV.**      **CONCLUSION**

2           For all of these reasons, TE respectfully requests that the Court grant summary judgment

3   in its favor on each of Plaintiff's individual claims or in the alternative, partial summary

4   judgment, and enter a separate judgment dismissing Plaintiff's individual claims with prejudice,

5   and dismissing the claims of the putative class members without prejudice.

6   DATED:  September 17, 2010          PATRICIA K. GILLETTE
                                        ANDREW R. LIVINGSTON
7                                       AMIRA B. DAY
                                        LENA P. RYAN
8                                       Orrick, Herrington & Sutcliffe LLP

9

10                                      _____/s/ *Andrew R. Livingston*_____
                                        ANDREW R. LIVINGSTON
11                                      Attorneys for Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
CASE NO. CV 10-00516 MHP